UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HITHAM ABUHOURAN, | ) | CASE NO. 4:06 CV 1207 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| R.L. MORRISON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On March 24, 2006, plaintiff pro se Hitham Abuhouran filed this Bivens[1] action against former Elkton Federal Correctional Institution ("FCI-Elkton") Warden R.L. Morrison, former FCI-Elkton Warden Mark Bezy, current FCI-Elkton Warden T.R. Sniezek, former FCI-Elkton Associate Warden Ralph Montalvo, FCI-Elkton Health Care Administrator Dr. M. Azam, FCI-Elkton Clinical Director Dr. Minenti, FCI-Elkton Special Investigation System ("SIS") Officer Link, SIS Assistant Lieutenant J. Fitzgerald, FCI-Elkton A/A Unit Manager Marylou Burns, Philadelphia Federal Detention Center ("FDC-Philadelphia") Warden Edward B. Motley, FDC-Philadelphia Associate Warden Mr. Arnold, FDC-Philadelphia Unit 6 Counselor Ms. McKlean, FDC-Philadelphia Unit 6 Manager Mr. Mills, FDC-Philadelphia Unit 6 Correctional Counselor Mr.

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

Stremmel, FDC-Philadelphia Unit 7 Counselor Ms. Gonzales, and FDC-Philadelphia Legal Counsel Darren Howard.  In the complaint, plaintiff alleges he has been exposed to excessive amounts of environmental tobacco smoke.  He seeks $155,000,000.00 in compensatory damages, and $32,000,000.00 in punitive damages.

## *Background*

Mr. Abuhouran was convicted on charges of bank fraud and money laundering and was sentenced on August 19, 1997 to 188 months of imprisonment. Mr. Abuhouran was initially housed in the Federal Correctional Institution in Fairton, New Jersey.  He was transferred to the Federal Correctional Institution in Allenwood, Pennsylvania in June 1999.  Mr. Abuhouran contends that at the time of his incarceration he was 39 years old and in good health.

Mr. Abuhouran was transferred to FCI-Elkton on August 27, 2001.  He indicates he was assigned to the A/B  Housing Unit and placed in Cube # 38.  Cube #38 is in close proximity to the common inmate bathroom.  Mr. Abuhouran claims he began to experience a deterioration in his health due to his inhalation of environmental tobacco smoke that filtered into his cube at night. He alleges that although FCI-Elkton's policy limits all smoking to designated outdoor areas, inmates regularly go into the common bathroom to smoke at night when the outdoor smoking areas are inaccessible to the inmates.  He states he complained verbally to staff members about the smoke and asked to be moved to a different cube.  He also sent written communications to Warden Morrison and to his Unit Staff indicating that he was experiencing headaches, eye irritation, and sinus problems as a result of exposure to the tobacco smoke.  He was told by Warden Morrison that smoking in the bathroom areas was not permitted and that he should report any violators to Unit Staff.  He contends that this response did not adequately address his concerns.

On September 13, 2001, Mr. Abuhouran was placed in the Special Housing Unit ("SHU"). When he was released to the general population on November 5, 2001, he was assigned to Cube # 36. He claims this cube is the closest to the bathroom. He signed up for sick-call on November 29, 2001 and was seen by a physician's assistant ("PA"). Mr. Abuhouran contends that the PA wrote a recommendation that he be kept away from smoking areas, but his cube assignment was not altered. He signed up for sick-call again on December 7, 2001, complaining that he was beginning to experience asthma attacks at night as a result of exposure to tobacco smoke. Dr. Quinn prescribed medications for asthma and high blood pressure and provided him with an inhaler. Mr. Abuhouran's cube assignment remained unchanged.

In late December 2001, Mr. Abuhouran spoke to Assistant Warden Ralph Montalvo regarding his medical problems. After that conversation, Mr. Abuhouran was assigned to Cube #60 which is much further away from the bathroom area. This arrangement proved to be temporary. A few days later, on January 3, 2001, Mr. Abuhouran was given a direct order to move to Cube #15 which is next to his former Cube #36 and very close to the bathroom. He made several attempts to be moved back to Cube # 60 but was unsuccessful. At some point in February 2002, Mr. Abuhouran was moved from the A/B unit to the A/A unit at FCI-Elkton. Mr. Abuhouran claims that the A/A and the A/B units are identical, and his new Cube, # 22, was approximately 10 feet from the bathroom area.

On July 2, 2002, Mr. Abuhouran was transported to the Eastern District of Pennsylvania to be tried on additional charges. While he was awaiting trial, he was housed in Unit 6 of FDC-Philadelphia. Mr. Abuhouran states that "[i]t is a smoking facility and tobacco product[s] are sold in [the] commissary." (Compl. at 11.) He indicates he was placed in a cell with a man who

3

smoked 3 to 4 packs of cigarettes every night.  He requested an immediate cell change due to his asthma.  He does not state whether he was moved as a result of his inquiry.  He does indicate, however, that the environmental tobacco smoke in this area was so pervasive that it affected the entire unit, including the cells and the recreation area.

Mr. Abuhouran claims FDC-Philadelphia officials retaliated against him for complaining about his exposure to tobacco smoke.  He was initially transferred to a cell "that was the worst in the housing unit because it flood[ed] when it rained." (Compl. at 12.)  He filed a grievance against his Unit Counselor and an hour later he was transferred to Unit 6 North, which is run by the same unit counselor, and was assigned to Cell #25 to reside with a heroin addict who smoked incessantly and was taking methadone.  He pleaded with the counselor to move him to a different cell.  After three months, he was placed in a cell with no other inmates.  Mr. Abuhouran claims he was then sent to the segregation unit for 12 days for refusing to withdraw a grievance he had filed.  Upon his release, he filed an Inmate Request to Staff form asking his Unit Counselor to enforce the non-smoking policy.[2]  As a result of his request, Unit Counselor Mr. Stremmel held a "town-house meeting" and informed the other inmates that Mr. Abuhouran was complaining about the amount of tobacco smoke in the unit and reminded them that they were not permitted to smoke in their cells. (Compl. at 13.)  Mr. Abuhouran indicates that he received numerous threats after this meeting and stopped leaving his cell for fear of reprisals.  He filed a grievance against Mr. Stremmel on January 2, 2004.  He claims he was then placed in the segregation unit where he remained until his transfer back to FCI-Elkton on March 2, 2004.

---

[2] This statement appears to contradict the plaintiff's earlier statement that the detention center permitted smoking.

On March 31, 2004, FCI-Elkton Warden Mark Bezy issued a memorandum to all inmates that the sale of tobacco products in the institution commissary would be discontinued in July 2004.  As promised, FCI-Elkton became a non-smoking facility on July 30, 2004.  Only Staff members are permitted to smoke on the prison grounds and they must do so outside of the buildings in the shacks which were once designated for inmate smoking use.  Inmates are prohibited from using tobacco products.

Mr. Abuhouran claims that smoking still occurs in the FCI-Elkton.  He claims the "black market" in cigarette sales is flourishing and contends that staff members are selling the tobacco products to the inmates for profit.  He indicates that two staff members were recently fired for smuggling cigarettes into the institution for sale to the inmates.  He further claims that FCI-Elkton is over its maximum population capacity and its ventilation system is poor.  Mr. Abuhouran claims he still suffers from a number of chronic conditions which he attributes to his exposure to environmental tobacco smoke.

The pleading contains two causes of action.  In his first cause, he asserts that the defendants have each been deliberately indifferent to his serious medical needs and subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  He asserts in his second cause of action that the defendants have denied him equal protection of the law in violation of the Fourteenth Amendment. He indicates that he is a Catholic Jordanian American who emigrated to the United States thirty years ago.  He claims other inmates were given preferential treatment "in assigning to [sic] the best sleeping quarters, job assignment, day to day assistance, in providing legal call and performance pay." (Compl. at 21.)  He also states that the defendants discriminated against him on the basis of his smoking preference.  He claims the defendants failed to protect the

rights of the minority of inmates who do not smoke by designating fully non-smoking housing units and enforcing the no smoking policies of the institutions. He seeks compensatory and punitive damages from the defendants.

*Analysis*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison

official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with the institution staff member designated to receive such requests. 28 C.F.R. § 542.14. If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

## I. FCI-Elkton (August 27, 2001 to July 2, 2002)

With respect to his claims against the Elkton officials for the events occurring from August 27, 2001 to July 2, 2002, Mr. Abuhouran attaches 16 documents to his complaint to demonstrate exhaustion of his administrative remedies. Only 7 of these documents are relevant to the Bureau of Prisons grievance process. He submitted a Request for Informal Resolution for B.P. 8.5 on December 6, 2001 stating that he was having asthma attacks from exposure to tobacco smoke. His unit manager replied that FCI-Elkton is a non-smoking facility and he should report violators of the prison policy to his unit staff. He filed a BP-9 form with the Warden on December 7, 2001 indicating that inmates smoke in the bathrooms at night and the manner in which his "team" chose to address the situation was contrary to his safety. (Compl. Ex. 6.) The Warden answered his grievance on January 4, 2004 stating that smoking is prohibited in the building and that violators of this policy would be punished. He filed a BP-10 appeal to the Regional Director on January 11, 2002, again complaining that his "team" is not doing enough to protect his health. (Compl. Ex. 19.) The appeal was denied on February 19, 2002. Mr. Abuhouran filed a BP-11 appeal to the General

Counsel on March 3, 2002. That appeal was denied on April 22, 2002.

Although Mr. Abuhouran filed all of the appropriate grievance forms, it is not clear that he exhausted his administrative remedies with respect to each claim against each defendant named in the complaint. See Curry, 249 F.3d at 504-05. In his grievances, he refers to his "team" without mentioning the names of the individuals he considers to be part of this group. While it is plausible that his Unit Manager Marylou Burns may be part of his "team," there is no suggestion that Warden Morrison, Associate Warden Ralph Montalvo, Health Care Administrator Dr. M. Azam, Clinical Director Dr. Minenti, SIS Officer Link, or SIS Assistant Lieutenant J. Fitzgerald are included in this group. The inmate bears the burden of establishing exhaustion of administrative remedies. Brown, 139 F.3d at 1104. Mr. Abuhouran has not satisfied that burden with respect to these defendants.

Generally, if the exhaustion requirement has not been met, the claims will be dismissed without prejudice. Brown v. Toombs, 139 F.3d at 1104. If, however, a cause of action on its face clearly fails to state a claim upon which relief may be granted, the court may dismiss it on the merits without requiring exhaustion. See 42 U.S.C. § 1997e(c)(2); Id. While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989);

---

[3] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997);
(continued...)

Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). Although Mr. Abuhouran has not demonstrated that he has complied with the mandates of §1997(e) for his causes of action against the FCI-Elkton defendants concerning the events which took place from August 27, 2001 to July 2, 2002, they fail to state a claim upon which relief may be granted, and are subject to dismissal without exhaustion.

As a threshold matter, it is obvious on the face of the complaint that the statute of limitations for bringing these claims expired before Mr. Abuhouran filed this action. A Bivens action in Ohio is governed by a two-year statute of limitations, pursuant to OHIO REV.CODE § 2305.10; Harris v. U.S., 422 F.3d 322, 331 (6th Cir. 2005). The events pertaining to Mr. Abuhouran's first incarceration in FCI-Elkton ended with his transfer to FDC-Philadelphia on July 2, 2002. He received his reply to his last administrative remedy on April 22, 2002. This pleading was filed on March 24, 2006, well beyond the expiration of the two year statute of limitations period. Consequently, there would thus be no purpose in allowing these claims to go forward in view of the fact that they are clearly time-barred. See, Fraley v. Ohio Gallia County, No. 97-3564, 1998 WL 789385, at **1 (6th Cir., Oct. 30, 1998)(affirming sua sponte dismissal of pro se section 1983 action filed after two year statute of limitations for bringing such an action had expired); see also Ashiegbu v. Kim, No. 97-3303, 1998 WL 211796 (6th Cir. Apr. 24, 1998).

**II. FDC-Philadelphia (July 10, 2002 to February 2004)**

Mr. Abuhouran submits 12 grievance forms pertaining to the conditions at FDC-

---

(...continued)
Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

Philadelphia.  On February 4, 2004, he submitted a "sensitive BP-9" to the Administrative Remedy coordinator at FDC-Philadelphia complaining of the staff's failure to enforce the smoking policy.[4] The grievance was rejected on February 11, 2004 because it was not first submitted in a BP-8.5. He was given 5 days in which to refile the grievance in its proper form.  Mr. Abuhouran did not file a grievance within the time period prescribed.  Instead, on April 14, 2004, he submitted a letter to the Administrative Remedy Coordinator stating that he intended his original grievance to be considered as a "sensitive BP-9" since he feared reprisals from him unit staff if he filed an informal grievance with them.  The letter asked that the grievance be reconsidered as a "sensitive BP-9." His request was rejected on April 14, 2004 because the issue he raised was not considered to be sensitive and because he had not first submitted his grievance through a Request for Informal Resolution for B.P. 8.5 form.  He sent another letter to the Administrative Remedy Coordinator on April 23, 2004 stating again that his grievance was against his unit manager and reiterated that he feared reprisals from Mr. Stremmel if he filed a BP 8.5.  He indicated that he was resubmitting the grievance as a sensitive BP-9.  The Administrative Coordinator once again rejected the letter on April 27, 2004 stating that if he wanted to file a grievance as sensitive, he would have to submit it as a BP-10 to the Regional Director.  If he did not wish to pursue that avenue, he needed to file a BP 8.5 at the institution level.  Undeterred, Mr. Abuhouran sent yet another letter to the Administrative Coordinator on April 28, 2004 indicating that he was re-submitting his grievance

---

[4] Although Mr. Abuhouran filed a "sensitive BP-9," it is not clear that such a remedy exists.  A "sensitive BP-10" may be filed directly with the Regional Director if the inmate reasonably believes the issue he is grieving is sensitive and would place the inmate in danger if his grievance were made known at the institution.  28 C.F.R. § 542.14(d)(1).  The BP-9 form is filed at the Institutional level and therefore would not alleviate the danger to the inmate if the grievance were made known at the institution.

as a "sensitive BP-9" because he feared retaliation from the unit team.  His letter was rejected for the fourth time because the issue raised was not considered sensitive, the grievance was submitted at the wrong level, the issue could be resolved by the warden and the warden should be given the opportunity to address the issue.  He then sent a letter to the Northeast Regional Office of the Bureau of Prisons stating that he was appealing the ruling on his "sensitive BP-9."  The Regional Director denied the appeal because it was untimely.  The Director noted that the "sensitive BP-9" was filed on February 4, 2004 and was rejected on February 11, 2004.  Mr. Abuhouran was given 5 days to submit the grievance at the institutional level or file an appeal.  He did not pursue either of these options in the timer period allotted.  He appealed that decision to the Bureau of Prisons General Counsel on a BP-11 form.  It was also rejected because the issue presented was not sensitive, the grievance was submitted at the wrong level, and the grievance was untimely.

Based on these forms, it is apparent that Mr. Abuhouran did not exhaust his administrative remedies with respect to the event which occurred at FDC-Philadelphia.  His "sensitive BP-9" was rejected and he was given five additional days to file a proper BP-8.5 at the institution level.  He did not follow this instruction.  To comply with the requirements of § 1997e, the prisoner must properly exhaust all of his administrative remedies.  Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006).  If a remedy is no longer available because the prisoner did not comply with a filing deadline, or a procedural requirement, his claim is procedurally defaulted and the exhaustion requirement has not been met.  Id.  Because Mr. Abuhouran's claims pertaining to his incarceration at FDC-Philadelphia were never properly submitted through the grievance process, he has not satisfied the mandates of § 1997e, and those claims cannot proceed.

### III. FCI-Elkton (March 2004 to March 2006)

Finally, Mr. Abuhouran has not demonstrated exhaustion of his claims against FCI-Elkton staff which arose after his return to that prison in March 2004. He alleges that although the prison has eliminated the sale of tobacco products in the prison commissary and banned all indoor and outdoor smoking by inmates, resourceful inmates still obtain cigarettes from the prison black market and find opportunities to smoke. He provides no grievance forms relative to this complaint and the complaint contains no specific allegations indicating that this claim has been exhausted.

Nevertheless, the causes of action associated with these allegations fail to state a claim upon which relief may be granted and are subject to dismissal under 28 U.S.C. §1915(e). Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish an objective component that a sufficiently serious deprivation has occurred. Id. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 1000. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Mr. Abuhouran fails to satisfy both of these criterion.

Specifically, he has not set forth allegations which reasonably suggest that the defendants have acted with a sufficiently culpable mental state to justify a finding of liability under the Eighth Amendment. Imperfect enforcement of a smoking policy cannot alone satisfy the subjective element of an Eighth Amendment claim. Scott v. District of Columbia, No. 97-7064, slip op. at *4 (D.C.Cir. April 3, 1998); see Helling v. McKinney, 509 U.S. 25, 36 (1993). Where the prison has a smoking policy, it is very difficult to demonstrate prison authorities are ignoring the possible dangers posed by environmental tobacco smoke. Helling, 509 U.S. at 36. Mr. Abuhouran alleges that Elkton has banned all inmate smoking and has eliminated the sale of tobacco products in the institution. Deliberate indifference is characterized by "obduracy and wantonness." Whitley v. Albers, 475 U.S. 312, 319 (1986). The complaint contains no set of facts which indicate the defendants' actions since Mr. Abuhouran's return to Elkton fit this description.

Moreover, although he includes a claim for relief under the Equal Protection Clause of the Fourteenth Amendment, there are no allegations in the complaint that reasonably suggest the defendants at FCI-Elkton discriminated against him on the basis of his national origin or his religion. The complaint contains only vague conclusory allegations of discrimination which appear to be directed at events which occurred at FCI-Elkton before his transfer to FDC-Philadelphia. He does not mention any interaction with the FCI-Elkton staff after his return to the prison in 2004. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

**Conclusion**

Accordingly, Mr. Abuhouran's claims against former FCI-Elkton Warden R.L. Morrison, former FCI-Elkton Warden Mark Bezy, current FCI-Elkton Warden T.R. Sniezek, former FCI-Elkton Associate Warden Ralph Montalvo, FCI-Elkton Health Care Administrator Dr. M. Azam, FCI-Elkton Clinical Director Dr. Minenti, FCI-Elkton Special Investigation System ("SIS") Officer Link, SIS Assistant Lieutenant J. Fitzgerald, FCI-Elkton A/A Unit Manager Marylou Burns are dismissed with prejudice pursuant to 28 U.S.C. §1915(e). His claims against FDC-Philadelphia Warden Edward B. Motley, FDC-Philadelphia Associate Warden Mr. Arnold, FDC-Philadelphia Unit 6 Counselor Ms. McKlean, FDC-Philadelphia Unit 6 Manager Mr. Mills, FDC-Philadelphia Unit 6 Correctional Counselor Mr. Stremmel, FDC-Philadelphia Unit 7 Counselor Ms. Gonzales, and FDC-Philadelphia Legal Counsel Darren Howard are dismissed without prejudice pursuant to 42 U.S.C. § 1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

 s/John R. Adams    August 10, 2006
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

---

[5] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.